UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

AARON CHAVEZ,

                Petitioner,                      Case No. 1:22-cv-561

v.                                        Honorable Paul L. Maloney

DAVID LEU,

                Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a federal prisoner under 28 U.S.C. § 2241. Petitioner Aaron Chavez is currently incarcerated at the Federal Correctional Institution (FCI) Petersburg Low in Petersburg, Virginia.[1] In his § 2241 petition, Petitioner challenges the results of a disciplinary proceeding in which he was found guilty of assaulting an officer and sanctioned to the loss of good conduct time (GCT).[2] (ECF No. 2, PageID.11.)

The Court directed Respondent to answer the petition in an order (ECF No. 4) entered on July 6, 2022. After receiving an extension of time to do so (ECF Nos. 6, 12), Respondent filed his response (ECF No. 13) on October 21, 2022. Respondent contends that Petitioner's § 2241 petition should be denied because: (1) some evidence supported the disciplinary decision; and (2) Petitioner received all the process to which he was due. (*Id.*, PageID.53.) On December 22, 2022, Petitioner

---

[1] When Petitioner filed his § 2241 petition, he was incarcerated at the now-closed North Lake Correctional Institution in Baldwin, Michigan. After the petition was filed, he was transferred to FCI Petersburg Low. (ECF No. 11.)

[2] Petitioner indicates that he was also charged with violations of Codes 112 and 113, use and possession of alcohol, but that these disciplinary convictions were expunged on August 5, 2021. (ECF No. 2, PageID.11.) Petitioner does not raise any challenges regarding the expunged charges.

filed a reply (ECF No. 20), as well as a motion for leave to file that reply out of time (ECF No. 21).

In support of that motion, Petitioner contends that he did not receive his copy of Respondent's

response until November 24, 2022, due to mail screening procedures at FCI Petersburg. (*Id.*,

PageID.183.) Petitioner has demonstrated good cause for filing his reply out of time and his motion

to do so will be granted. For the following reasons, the Court will deny Petitioner's § 2241 petition.

<u>**Discussion**</u>

I.      **Background**

Petitioner is currently serving a 120-month sentence imposed by the United States District

Court for the Central District of California following his conviction for distribution of

methamphetamine. (Grimsley Decl. ¶ 4, ECF No. 13-1, PageID.68.) Petitioner's current projected

release date, with GCT considered, is July 15, 2025. (*Id.*)

On November 30, 2020, Officer Thebo was conducting rounds when he was called to assist

Officer Leusby in Echo Delta cell 107. (Incident Report, ECF No. 13-1, PageID.79.) When Officer

Thebo entered that cell, he saw Petitioner "attempting to flush an unknown substance down the

toilet." (*Id.*) Petitioner dropped the bottle, and as Officer Thebo went to retrieve it, Petitioner

pushed Officer Thebo away from the bottle. (*Id.*) Officer Thebo "retrieved the bottle anyway," and

Petitioner was taken to the Restricted Housing Unit. (*Id.*)

Officer Thebo drafted the Incident Report charging Petitioner with a violation of Code 224,

assaulting any person, on November 30, 2020, at 9:45 p.m. (*Id.*, PageID.79.) Officer Leusby

prepared a memorandum regarding the incident. (*Id.*, PageID.81.) Officer Leusby stated that as

Officer Thebo reached to pick the dropped bottle off of the floor of the cell, Petitioner used his

shoulder to push Officer Thebo "in his shoulder to prevent him from picking the bottle up." (*Id.*)

Petitioner became angry, balled up his fists, and raised his voice, calling Officers Thebo and

Leusby slurs. (*Id.*)

On December 1, 2020, the incident was referred to the Lake County Sheriff's Department for possible criminal proceedings. (*Id.*, PageID.113.) The Sheriff's Department denied the referral on December 22, 2020. (*Id.*)

On December 23, 2020, Officer E. Lawson delivered a copy of the Incident Report to Petitioner. (*Id.*, PageID.79.) Petitioner was advised of his rights, including his right to remain silent; he indicated that he understood his rights. (*Id.*, PageID.80.) When Lawson asked if Petitioner wished to make a statement, Petitioner made the following statement: "I'm not stupid. Touch a c/o are you crazy. I have been in since 2016 and not been in any trouble. Why would I start now[?]" (*Id.*) The Incident Report was forwarded to the Unit Disciplinary Committee (UDC) for further proceedings. (*Id.*)

Petitioner appeared before the UDC on December 30, 2020. (*Id.*, PageID.79.) Petitioner stated that it was "all bullsh\*\*" and that he "was not trying to flush anything." (*Id.*) Petitioner requested that video surveillance footage be reviewed. (*Id.*) The UDC referred the Incident Report to the Discipline Hearing Officer (DHO) for further proceedings. (*Id.*) The UDC also recommended, as sanctions, the loss of 27 days of GCT and the loss of 2 months of commissary privileges. (*Id.*) That same day, Petitioner was provided a Notice of Disciplinary Hearing Before the DHO form. (*Id.*, PageID.115.) Petitioner indicated that he did not wish to have a staff representative and did not wish to call any witnesses. (*Id.*) He was also provided a copy of his rights at the DHO hearing and signed to indicate that he had been advised of such. (*Id.*, PageID.117.)

Petitioner appeared before the DHO on February 22, 2021. (*Id.*, PageID.119.) The DHO confirmed that Petitioner had waived his right to a staff representative and that Petitioner did not

wish to call any witnesses. (*Id.*) When asked if he wished to make a statement, Petitioner denied

assaulting Officer Thebo and stated:

> I never touched or tried to touch that Officer in any way. It was never two bottles at any time. I was holding a cup. I did not try to flush anything either. It was one bottle on the floor. I'm dark, he's white. If I would have touched him with my shoulder I would have left a bruise. I don't recall everything what I said. I hold my [F]ifth."

(*Id.*) In addition to the Incident Report and investigation, the DHO reviewed the criminal referral

declination email from the Lake County Sheriff's Department, Officer Leusby's memorandum,

Petitioner's medical report from the date of the incident, two still photographs printed from video

surveillance footage, and one photograph of the confiscated bottles. (*Id.*, PageID.119–120.) The

DHO concluded that Petitioner had violated Code 224, assaulting any person, as charged. (*Id.*,

PageID.120.) The DHO sanctioned Petitioner to: (1) disallowance of 27 days of GCT; and (2) 30

days of disciplinary segregation, which was suspended for a period of 180 days pending

Petitioner's "clear discipline conduct." (*Id.*, PageID.121.) Petitioner received a copy of the DHO

Hearing Report on March 3, 2021. (*Id.*, PageID.122.)

On February 24, 2021, the DHO sent the disciplinary packet for Petitioner's Code 224

proceedings to the Privatization Management Branch (PMB) of the Bureau of Prisons (BOP) for

certification. (Bryan Decl. ¶ 4, ECF No. 13-2, PageID.143.) The DHO report was certified that

same day. (*Id.*) By certifying the proceedings, staff at the PMB concluded that the due process

requirements were met and that there was some evidence to support the finding that Petitioner

violated Code 224, assaulting any person. (*Id.*) The PMB also found that the sanctions were

appropriate and complied with BOP policy. (*Id.*) Petitioner subsequently appealed the disciplinary

action to the PMB and the National Administrator for Inmate Appeals; both appeals were denied.

(ECF No. 13-1, PageID.133–138.)

Petitioner's § 2241 petition followed. (ECF No. 1.) In his brief in support thereof, Petitioner asserts that his disciplinary proceedings violated his due process rights in the following four ways: (1) he did not receive a copy of the Incident Report within 24 hours of when staff became aware of the incident; (2) staff charged him with actions taken by another inmate; (3) his UDC hearing was improperly delayed; and (4) the DHO could not impose sanctions against him because the DHO is not a Bureau of Prisons (BOP) employee. (ECF No. 2, PageID.13–15.) Petitioner requests that his disciplinary conviction be vacated and expunged." (*Id.*, PageID.15.)

## II.      Discussion

A federal inmate may challenge the manner or execution of his sentence under 28 U.S.C. § 2241. *See Hill v. Masters*, 836 F.3d 591, 594 (6th Cir. 2016) (citing *United States v. Peterman*, 249 F.3d 458, 461 (6th Cir. 2001)). "[Section] 2241 is a vehicle . . . for challenging matters concerning the execution of a sentence such as the computation of good time credits." *See Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004). Because Petitioner is challenging the loss of GCT because of his disciplinary conviction, and this challenge involves "the fact or extent of [Petitioner's] confinement, it can only be brought as a § 2241 petition. *See Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).

Where the government creates "the right to good time and itself recogniz[es] that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment [or Fifth Amendment] 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the [government]-created right is not arbitrarily abrogated." *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Stating that Petitioner is entitled to due process protection in connection with the disciplinary proceeding, however, does not define the scope of that protection.

5

The Supreme Court has recognized that the scope of due process protection in the prison

disciplinary context may be limited:

> We have often repeated that "[t]he very nature of due process negates any concept
> of inflexible procedures universally applicable to every imaginable situation."
> *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S., at 895. "Consideration of
> what procedures due process may require under any given set of circumstances
> must begin with a determination of the precise nature of the government function
> involved as well as of the private interest that has been affected by governmental
> action." *Ibid*.; *Morrissey*, 408 U.S., at 481. Viewed in this light it is immediately
> apparent that one cannot automatically apply procedural rules designed for free
> citizens in an open society, or for parolees or probationers under only limited
> restraints, to the very different situation presented by a disciplinary proceeding in a
> state prison.

*Wolff*, 418 U.S. at 561. The Court concluded that when good time sentence credit was at issue in

a prison disciplinary proceeding, a prisoner was entitled to these procedural elements: advanced

written notice of the charges; the opportunity to call witnesses and present other evidence in his or

her defense; and a written decision explaining the grounds used to determine the sanctions

imposed. *Id* at 563–66. Additionally, the Supreme Court has held "that the requirements of due

process are satisfied if *some evidence* supports the decision by the prison disciplinary board to

revoke good time credits." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985) (emphasis supplied).

The limits of due process essentially define the boundaries of the protection afforded by

§ 2241. There is no direct judicial review of the BOP's determinations involving reduction of

"good conduct" time, *see* 18 U.S.C. § 3625; *Jordan v. Wiley*, 411 F. App'x 201, 214 (10th Cir.

2011), and BOP program statements are clearly not "laws . . . of the United States" such that their

violation warrants relief under § 2241, *see, e.g.*, *Reno v. Koray*, 515 U.S. 50, 61 (1995) ("[T]he

Bureau's . . . 'Program Statemen[t]'. . . [is] . . .an internal agency guideline . . . akin to an

'interpretive rule' . . . ."); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011) ("A habeas claim

cannot be sustained based solely upon the BOP's purported violation of its own program statement

because noncompliance with a BOP program statement is not a violation of federal law.").

It may be that the BOP regulations regarding disciplinary procedures would be considered "laws . . . of the United States." *See generally* 13D Charles A. Wright and Arthur R. Miller*, Federal Practice and Procedure* § 3563 (3d ed.1998) ("The reference in § 1331 to 'laws . . . of the United States' raises more difficult problems. In general, it means that there will be federal-question jurisdiction for a claim arising under an Act of Congress or an administrative regulation or executive order made pursuant to an Act of Congress." (footnotes omitted)).[3] Even Wright and Miller note, however, that the general rule is not "universally true;" sometimes regulations are not considered "laws of the United States." *Id*. Wright and Miller cite as an example, *Einhorn v. DeWitt*, 618 F.2d 347, 349–350 (5th Cir. 1980) ("[T]his action arises from an Internal Revenue Service regulation and not an Act of Congress. [The regulation] is a part of the Internal Revenue Service's Statement of Procedural Rules promulgated under 5 U.S.C. §§ 301, 552. Their purpose is to govern the internal affairs of the Internal Revenue Service. They do not have the force and effect of law."). *Einhorn*, in turn, cited *Luhring v. Glotzbach*, 304 F.2d 560 (4th Cir. 1962), in which the Fourth Circuit noted that the procedural rules at issue "were promulgated under the authority of . . . the Internal Revenue Code . . . and the Administrative Procedures Act . . .and were published in the Federal [R]egister . . . . In our view the procedural rules do not [have the force and effect of law]; and compliance with them is not essential to the validity of a notice of deficiency." *Luhring*, 304 F.3d at 563.

*Einhorn* and *Luhring* suggest that the nature and intention of the regulation is of significance in determining whether it should be considered a "law of the United States." It is difficult to ignore, therefore, that the disciplinary proceedings provided for in the regulations at

---

[3] Wright and Miller are commenting on the phrase "Constitution, laws, or treaties of the United States" as it appears in 28 U.S.C. § 1331, regarding federal question jurisdiction, not as it appears in 28 U.S.C. § 2241(c)(3), regarding habeas corpus. Nonetheless, the words are the same.

issue here are not subject to judicial review under the Administrative Procedures Act and they are

entirely procedural in nature. Perhaps that is why at least some federal courts have concluded that

failure to comply with the regulations, without more, is not a ground for relief under § 2241.

*See, e.g.*, *Dababneh v. Warden Loretto FCI*, 792 F. App'x 149, 151 (3d Cir. 2019) ("[E]ven where

judicial review under the APA is specifically excluded by statute, judicial review remains available

for allegations that BOP action violates the United States Constitution, *see Webster v. Doe*, 486

U.S. 592, 603–04 (1988), or is contrary to established federal law, *see Neal v. United States*, 516

U.S. 284, 295 (1996)."); *Martinez v. Fisher*, No. 13-cv-1150, 2015 WL 3756150, at *5 (D. Minn.

Jun. 11 2015) ("[E]ven if Petitioner could establish that some of the BOP regulations were not met

here, this would not entitle him to habeas relief. Habeas relief is only available for a violation of

the Constitution, laws, or treaties of the United States."). *But see Lao v. Schult*, No. 9:09-cv-00653,

2010 WL 743757, at *5 (N.D.N.Y. Feb. 25, 2010) ("In this case, it is evident that the BOP

regulations governing prison disciplinary proceedings, which have the force and effect of law,

either were not followed or were misapplied. Thus imposition of the disciplinary action herein was

contrary to the laws of the United States.").[4]

Because there is a possibility that violations of the BOP's regulations regarding prison

disciplinary proceedings might, standing alone, rise to the level of a violation of the laws of the

United States, the Court will consider any claims regarding such separately from the claim that the

violation of the regulations resulted in a violation of Petitioner's due process rights.

---

[4] Although the *Lao* court concluded that violation of the regulations, even where those violations
did not constitute violations of due process, could form the foundation for a § 2241 action as a
violation of the laws of the United States, the *Lao* court also concluded that the violations in that
case were harmless and, thus, relief was not warranted.

A.       **Violations of BOP Regulations**

Three of Petitioner's four arguments in support of relief implicate the BOP's regulations regarding prison disciplinary proceedings. First, Petitioner contends that staff violated regulations regarding when the Incident Report must be provided to the inmate. Petitioner contends that the Incident Report was delivered to him "23 days . . . after the supposed[] incident took place." (ECF No. 2, PageID.13.)

BOP regulations for disciplinary proceedings state that an inmate "will **ordinarily** receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28 C.F.R. § 541.5(a) (emphasis added). Petitioner is correct that he did not receive a copy of the Incident Report until 23 days after the incident occurred. Petitioner's receipt of the Incident Report was delayed by the referral of the report to the Lake County Sheriff's Department for possible criminal prosecution. (ECF No. 13-1, PageID.113.) The Sheriff's Department did not deny the referral until December 22, 2020. (*Id.*) Petitioner then received the Incident Report one day later, on December 23, 2022. BOP regulations do not mandate that an Incident Report always be provided to an inmate within 24 hours. *See Millhouse v. Warden Lewisburg USP*, 785 F. App'x 931, 934 (3d Cir. 2019). By qualifying the timing of receipt with the word "ordinarily," the BOP has placed inmates such as Petitioner on notice that there may be times when Incident Reports are provided more than 24 hours after staff become aware of the incident. *See Spotts v. Holt*, No. 11-cv-18080, 2015 WL 4219751, at *4 (M.D. Pa. July 10, 2015) (noting that § 541.5(a) does not contain an absolute timing requirement). Staff, therefore, did not violate BOP regulations by not providing the Incident Report to Petitioner within 24 hours, and Petitioner's argument otherwise lacks merit.

Petitioner next suggests that his UDC hearing was not held within five working days after his detention in the RHU on the date of the incident as required by BOP regulations. (ECF No. 2,

PaageID.14.) The governing regulation, however, provides that the "UDC will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). In Petitioner's case, the Incident Report was issued to Petitioner on December 23, 2020, which was a Wednesday. Thus, the five-day period began to run on Thursday, December 24, 2020. However, December 25–27, 2020, did not count toward that five-day period, because December 25th is a holiday, and December 26–27, 2020, fell on a weekend. Petitioner's UDC hearing occurred on Wednesday, December 30, 2020, and therefore occurred within the five-day period provided by § 541.7(c). Petitioner's argument otherwise is frivolous.

Finally, Petitioner contends that the DHO could not impose sanctions upon him because the DHO is an employee of the GEO Group, the private corporation that operated the North Lake Correctional Facility under contract with the BOP, and not the BOP itself.[5] (ECF No. 2, PageID.14–15.) This Court recently considered and rejected an identical argument raised by a prisoner who also challenged a disciplinary proceeding that occurred at North Lake. *See Jean v. Johns*, No. 1:21-cv-341, 2021 WL 4260626, at *5–7 (W.D. Mich. Sept. 20, 2021). In rejecting the petitioner's argument, Judge Neff stated:

> Finally, Petitioner contends that the DHO, who is an employee of GEO Group, and not a BOP staff member, cannot impose sanctions.[] Petitioner contends that having a GEO Group employee impose sanctions runs afoul of the regulatory statement of purpose: "This program helps ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing Bureau staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1. The regulations define staff as "any employee of the Bureau of Prisons or Federal Prison

---

[5] Petitioner does not contest the DHO's authority to conduct the hearing, and the authority to impose sanctions under the regulations is separate from the authority to conduct a hearing. The Court will not consider whether the DHO had authority to conduct Petitioner's disciplinary hearing because Petitioner has not raised that issue.

Industries, Inc." 28 C.F.R. § 500.1. It appears to be undisputed that DHO Perry is not an employee of the BOP.

This argument has met with varying degrees of success in different federal courts. One such court is the United States District Court for the Southern District of Georgia, where this case originated. In that court, in connection with a different § 2241 petition, Magistrate Judge Benjamin W. Cheesbro reasoned that in light of the stated purpose of the BOP discipline program, DHO Perry might not have the authority to impose sanctions on Petitioner. *Jean v. Johns*, No. 5:20-cv-60, 2021 WL 1097953, at *3 (S.D. Ga. Feb. 16, 2021); *see also Khalifa v. Johns*, 5:19-cv-103, 2020 WL 6576789 (S.D. Ga. Aug. 20, 2020); *Cruz v. Johns*, 5:19-cv-86, 2020 WL 5649333 (S.D. Ga. Aug. 20, 2020); *Guzman v. Johns*, 5:19-cv-90, 2020 WL 6576786 (S.D. Ga. Aug. 12, 2020). The problem is not that the BOP could not delegate the conduct of disciplinary proceedings or the imposition of sanctions to someone other than a BOP employee, *see, e.g.*, *Jean*, 2021 WL 1097953, at *2 (citing *Hilario-Paulino v. Pugh*, 194 F. App'x 900 (11th Cir. 2006); the problem is that, based on the statement of purpose, the BOP did not delegate that authority.

Prior to 2011, the regulations clearly precluded any person other than a BOP employee from imposing sanctions. Section 541.10(b)(1) of 28 C.F.R., prior to its repeal effective June 20, 2011, provided that "only institution staff may take disciplinary action." *Arredondo-Virula v. Adler*, 510 F. App'x 581, 582 (9th Cir. 2013). That section, coupled with the definition of staff in § 500.1(b) as "any employee of the Bureau or Federal Prison Industries, Inc.," ruled out the possibility that someone other than a BOP employee could take disciplinary action. Although the 2011 changes addressed many of the difficulties encountered when applying to private federal prisons regulations designed for a world without private federal prisons, it did not change the purpose statement. The phrase indicating that the regulations "allow[] Bureau staff to impose sanctions" remains. Some federal courts have concluded, despite the removal of the express limits that previously appeared in § 541.10, that because the purpose statement allows Bureau staff to act, it excludes anyone else. *See, e.g.*, *Allen v. Young*, 5:18-cv-01463, 2020 WL 2477939, at *7 (S.D.W. [Va.] Mar. 2, 2020).

The BOP has attempted to address the potential conflict. In some instances, the BOP has held a new hearing with BOP staff. *See, e.g.*, *Villarreal v. Rickard*, No. 1:15-11467, 2018 WL 1973281 (S.D.W. [Va.] Apr. 26, 2018); *Green v. Masters*, No. 1:14-cv-31194, 2017 WL 7312114 (S.D.W.[Va.] Dec. 13, 2017); *Pena-Carrizoza v. Bragg*, No. 1:14-cv-25696, 2016 WL 7168412 (S.D.W. [Va.] Aug. 16, 2016). In other instances, a BOP employee has reviewed and approved the DHO hearing, report, and sanctions. *See, e.g.*, *Perez-Flores v. Benov*, No. 1:13-cv-01469, 2015 WL 3448067 (E.D. Cal. May 28, 2015) (herein *Perez-Flores*).

In *Perez-Flores*, the district court reviewed the procedures the BOP had put in place to address the conflict that was created by application of the BOP regulations to prisons run privately under contract with the BOP. Those procedures were set out in a March 30, 2007 memorandum which was supplemented with a document titled

11

"Inmate Discipline at Private Facilities Technical Direction." *Perez-Flores* (Doc. 11-1, Page 26–29.) According to the memo, the BOP created a pilot program to be implemented at the McRae Correctional Facility and the Taft Correctional Institution. Staff at those institutions would go through BOP DHO training. The disciplinary process would proceed as it had previously, but if the sanctions impacted good conduct time, the DHO decision would be sent to a BOP employee who would review the entire file and make an independent decision regarding the discipline and sanctions. The sanction would not actually be entered in the prisoner's file until the BOP employee certified the disciplinary proceeding.

*Id.* at *5–6.

Here, the BOP followed the procedures described *supra* in Petitioner's case. The DHO advised Petitioner that the PMI would review Petitioner's disciplinary proceedings because he was sanctioned with disallowance of 27 days of GCT. (DHO Hearing Report, ECF No. 13-1, PageID.121.) Jeremy Bryan, a DHO Oversight Specialist at the PMI, reviewed the DHO's report and certified the results. (Bryan Decl. ¶ 4, ECF No. 13-2, PageID.143, 162.) The response to Petitioner's appeal to the PMI indicates that the sanctions were not imposed until they were certified by Bryan. (ECF No. 13-1, PageID.137 ("The sanctions imposed are authorized by and in accordance with PS 5270.09 and [were] certified by the Bureau's DHO on February 24, 2021.").) Petitioner has provided no evidence to contradict a conclusion that the sanctions were imposed by, or at the direction of, Bryan, a BOP employee. Petitioner, therefore, has failed to demonstrate any violations of 28 C.F.R. § 541.1.

**B.    Violations of Due Process**

Instead of focusing on the basic hallmarks of due process identified in *Wolff* and *Hill*, Petitioner primarily relies upon federal regulations and suggests that the failure to follow certain regulations constituted a denial of due process. The Supreme Court, however, has concluded that procedural regulations do not confer constitutional rights on inmates. *See Sandin v. Conner*, 515 U.S. 472, 482 (1995). Moreover, the Sixth Circuit has noted that the BOP's "failure to adhere to its own policies or guidelines does not constitute a violation of due process." *Julick v. Snyder-*

12

*Norris*, No. 16-6652, 2017 WL 5485453, at *2 (6th Cir. Mar. 1, 2017); *see also Bonner v. Fed. Bur. of Prisons*, 196 F. App'x 447, 448 (8th Cir. 2006) (noting that "a violation of prison regulations in itself does not give rise to a constitutional violation"). For that reason alone, any arguments by Petitioner that staff violated his due process rights by disregarding BOP procedures do not set forth meritorious claims for relief.

Nonetheless, Petitioner's arguments do raise due process implications. Petitioner first contends that his due process rights were violated because he did not receive a copy of the Incident Report until 23 days after the incident took place. (ECF No. 2, PageID.13.) As explained above, that delay occurred because the incident was referred to the Lake County Sheriff's Department for possible criminal prosecution, and the Sheriff's Department did not decline the referral until December 22, 2020. In any event, *Wolff* mandates that an inmate should receive written notice of the disciplinary charges against him "no less than 24 hours" before his disciplinary hearing. *See Wolff*, 418 U.S. at 564. Here, Petitioner received a copy of the Incident Report on December 23, 2020, appeared before the UDC on December 30, 2020, and appeared before the DHO on February 22, 2021. Thus, no due process violation occurred by the delay in providing the Incident Report to Petitioner because he received notice of the charge well in advance of his disciplinary hearing.

Petitioner's second contention is that the UDC hearing was not held within five days of when the incident occurred. (ECF No. 2, PageID.14.) As noted above, the five-day period for UDC hearings runs from the date the Incident Report was issued, not the date the incident occurred, and Petitioner's hearing occurred within that five-day period. In any event, Petitioner's contention regarding the timing of his UDC hearing does not directly correspond to any requirement of due process. Petitioner does not identify how he was prejudiced by having his UDC hearing within four (4) working days after he received the Incident Report, and the Court cannot conceive of any

13

prejudice. Of note, the UDC's findings did not constitute the final disciplinary action in Petitioner's proceedings. Petitioner has simply failed to establish that he suffered unconstitutional delay in the disciplinary process.

Petitioner also argues that his due process rights were violated because he was sanctioned by a "partial" DHO who was a GEO Group employee, not an employee of the BOP. (ECF No. 2, PageID.14–15.) As discussed above, Petitioner was ultimately sanctioned by a BOP employee who certified the disciplinary proceedings. In any event, while "[t]he Due Process Clause entitles a person to an impartial and disinterested tribunal," *see Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980), Petitioner fails to explain his assertion that the DHO was partial. To the extent Petitioner believes the DHO was partial because he was employed by the GEO Group, "[t]he mere fact that the hearing officer is employed by [a private contract] does not demonstrate that the hearing officer is partial any more than a BOP staff member hearing officer at a government-owned facility must be inherently partial." *See Perez-Flores*, 2015 WL 3448067, at *4. Petitioner simply has not presented any facts from which the Court could infer that the DHO acted in a partial and interested way when he held Petitioner's disciplinary hearing and rendered his decision. Furthermore, to the extent Petitioner contends that a GEO Group-employed DHO would be partial but a BOP-employed DHO would not be, the BOP's certification of the DHO's determination would "remove any taint of partiality." *Jean*, 2021 WL 4260626, at *8.

The DHO Report indicates that Petitioner was provided notice, an opportunity to be heard, and a written decision and, therefore, received the procedural protections mandated under *Wolff*. Petitioner's final argument suggests that "some evidence" did not support his disciplinary conviction because another inmate, Perez-Cruz, was the one who assaulted Officer Thebo. (ECF No. 2, PageID.13–14.) Petitioner contends that the lieutenant in charge of the RHU wrote

14

on the Administrative Detention Order issued for Petitioner that "inmate Perez-Cruz was moved to RHU because he was intoxicated and for an assault on a staff member." (*Id.*, PageID.14.)

The Court notes that Petitioner never raised this argument during his disciplinary proceedings. In any event, Petitioner has attached a copy of the Administrative Detention Order to his brief in support of his § 2241 petition. That order explicitly states at the top that the subject is "Placement of Chavez Aaron . . . in Administrative Detention" because he was "pending a hearing for a violation of Bureau regulations."(ECF No. 2-7, PageID.37.) While the order does reference inmate Perez-Cruz and stated that "[i]nmate Perez-Cruz was moved to RHU because he was intoxicated and for an assault on a staff member" (*id.*), Petitioner has presented no evidence from which the Court could infer that this was anything more than a typographical error. *See Millhouse*, 785 F. App'x at 935 (concluding that a typographical error regarding the inmate-petitioner's first name on an incident report did not violate due process because the noted assigned inmate register number matched the petitioner's identification). In any event, Petitioner's disciplinary conviction for a violation of Code 224, assaulting any person, was clearly based on "some evidence," including Officer Thebo's Incident Report, as well as Officer Leusby's memorandum detailing how he witnessed the incident. Petitioner, therefore, is not entitled to the relief he seeks.

## Conclusion

For the reasons discussed above, Petitioner's motion for leave to file a reply out of time (ECF No. 21) will be granted. The Court concludes that Petitioner received the procedural protections mandated under *Wolff* and the BOP's disciplinary regulations. Moreover, "some evidence" supports the DHO's conclusion that Petitioner was guilty of violating Code 224.

Accordingly, the Court will enter a judgment denying Petitioner's § 2241 petition.[6]

Dated:   February 8, 2023                       /s/ Paul L. Maloney

                                                                 Paul L. Maloney
                                                                 United States District Judge

---

[6] In § 2241 cases involving federal prisoners, the Court need not address whether to grant a certificate of appealability. *See Witham v. United States*, 355 F.3d 501 (6th Cir. 2004).

16